UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JONATHAN HARVES WILKES,

                    Petitioner,

vs.                                          Case No. 3:17-cv-47-J-39JBT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.
_____


**ORDER**

**I.  INTRODUCTION**

        Petitioner Jonathan Harves Wilkes is challenging a Clay County
judgment of conviction for aggravated manslaughter of a child
through his Petition for Writ of Habeas Corpus (Petition) (Doc. 1).
He raises six grounds.  Respondents filed an Answer in Response to
Order to Show Cause (Response) (Doc. 14).[1]  Petitioner filed a
Reply to the State's Response (Reply) (Doc. 16).  See Order (Doc.
5).

------

        [1] The Court hereinafter refers to the exhibits in the Appendix
(Docs. 14) as "Ex."  Where provided, the page numbers referenced in
this opinion are the Bates stamp numbers at the bottom of each page
of the exhibit.  Otherwise, the page number on the particular
document will be referenced.

## II.  CLAIMS

The six grounds are: (1) a violation of substantive due process rights, claiming Petitioner's actions did not constitute the crime of aggravated manslaughter of a child; (2) the ineffective assistance of counsel for failure to file a motion to dismiss the charge; (3) the ineffective assistance of counsel for failure to inform Petitioner of the defenses to the charge before Petitioner entered his plea; (4) the ineffective assistance of counsel for failure to object to the inclusion of sentencing points for causing the death of the victim; (5) the trial court's commitment of a fundamental error for imposing victim-injury points without a finding by a jury that the victim's death was the direct result of the Petitioner's criminal actions; and (6) the ineffective assistance of counsel for  failure to file a motion in limine.

## III.  EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  As the record refutes the asserted factual allegations or otherwise precludes habeas relief, Petitioner is not entitled to an evidentiary hearing.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

Petitioner has not met his burden demonstrating a need for an evidentiary hearing. <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012).

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254.  This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." <u>Shoop v. Hill</u>, 139 S.Ct. 504, 506 (2019) (per curiam).  The AEDPA statute:  "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." <u>Id</u>.  Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, Nos. 14-14178; 15-14734, 2019 WL 101161, at *10 (11th Cir. Jan. 4, 2019) (citing <u>Virginia v. LeBlanc</u>, 137 S.Ct. 1726, 1728 (2017) (per curiam)).

Applying the statute as amended by AEDPA, federal courts may grant habeas relief:

> only when the adjudication of a federal
> constitutional claim "on the merits in State
> court proceedings" either "resulted in a
> decision that was contrary to, or involved an
> unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States" or
> "resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d). "This narrow evaluation is highly deferential, for a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Morrow v. Warden, 886 F.3d 1138, 1146-47 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted) (quoting Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). The decision of a state court is "contrary to" federal law only if it "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1355 (11th Cir. 2009) (citation and internal quotation marks omitted). The decision of a state court "involves an unreasonable application of federal law if it identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply." Id. (citation and internal quotation marks omitted). "The question ... is not whether a federal court believes the state court's determination was correct but whether that determination was unreasonable—a substantially higher threshold." Id. (citation and internal quotation marks omitted).

Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d 1314, 1321 (11th Cir. 2018).

A district court is charged with reviewing the conclusions of the state court, deferring to the state court decisions, and granting habeas relief only if the adjudication of the claim resulted in a decision that was contrary to, or involved an

unreasonable application of Supreme Court precedent. "Clear error will not suffice." <u>Virginia v. LeBlanc</u>, 137 S.Ct. at 1728. This formidable barrier to habeas relief is very difficult to overcome as highly deferential AEDPA deference is due, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. Thus, if some fairminded jurists could agree with the lower court's decision, habeas relief must be denied. <u>Meders</u>, 2019 WL 101161, at *10.

When reviewing a state court's decision, AEDPA deference is not based on the "specificity or thoroughness" of the decision; indeed, the "no-grading-papers, anti-flyspecking rule remains the law of the circuit." <u>Meders</u>, 2019 WL 101161, at *12. Consequently, a district court is not obliged to "flyspeck the state court order or grade it." <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 898 F.3d at 1345. Notably, AEDPA deference is given even if no rationale or reasoning is provided. <u>Meders</u>, 2019 WL 101161, at *12 (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011)).

A district court should afford a presumption of correctness to state trial and appellate courts' factual determinations. <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 568 U.S. 1233 (2013). Thusly, "the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and

convincing evidence.' 28 U.S.C. § 2254(e)(1)." <u>Morrow v. Warden</u>,

886 F.3d 1138, 1147 (11th Cir. 2018), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u>,

(U.S. Oct. 19, 2018) (No. 18-6409).

The Supreme Court of the United States has imparted its wisdom

in employing AEDPA review:

> "Deciding whether a state court's
> decision 'involved' an unreasonable
> application of federal law or 'was based on'
> an unreasonable determination of fact requires
> the federal habeas court to 'train its
> attention on the particular reasons—both legal
> and factual—why state courts rejected a state
> prisoner's federal claims.'" <u>Wilson v.</u>
> <u>Sellers</u>, --- U.S. ----, 138 S.Ct. 1188,
> 1191-92, --- L.Ed.2d ---- (2018) (quoting
> <u>Hittson v. Chatman</u>, --- U.S. ----, 135 S.Ct.
> 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg,
> J., concurring in denial of certiorari) ). The
> Supreme Court recently held that, when the
> relevant state court decision is not
> accompanied by a reasoned opinion explaining
> why relief was denied, "the federal court
> should 'look through' the unexplained decision
> to the last related state-court decision that
> does provide a relevant rationale" and
> "presume that the unexplained decision adopted
> the same reasoning." <u>Id</u>. at 1192. "[T]he State
> may rebut the presumption by showing that the
> unexplained affirmance relied or most likely
> did rely on different grounds than the lower
> state court's decision." <u>Id</u>.

<u>Johnson v. Sec'y, Dep't of Corr.</u>, 737 F. App'x 438, 441 (11th Cir.

2018) (per curiam).

If the last state court to decide a federal claim provides an

explanation for its merits-based decision in a reasoned opinion,

the district court simply reviews the specific reasons given by the

state court and defers to those reasons, if they are reasonable.

But, if no explanation is provided, for example, the opinion simply states affirmed or denied, the district court should "look through" the unexplained decision to the last related state-court decision that provides relevant rationale. The district court presumes the unexplained decision adopted the same reasoning as the lower court, however, this presumption is not irrebutable, as strong evidence may refute it. See Kernan v. Hinojosa, 136 S.Ct. 1603, 1606 (2016) (per curiam). In an effort to rebut the presumption, the state may attempt to show the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018) (Wilson).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, No. 16-16350, 2019 WL 272835, at *6 (11th Cir. Jan. 22, 2019) (stating reviewing court may begin with either of the components).

"For a third of a century[,]" a counsel's performance has been considered deficient only if counsel's performance is outside the wide range of professionally competent assistance.  <u>Meders</u>, 2019 WL 101161, at *10.  In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense.  In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015); <u>Knowles v. Mirzayance</u>, 556 U.S. 111,

123 (2009).  Thus, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 544 U.S. 982 (2005).  As a result, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  Of note, ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  <u>See</u> <u>id</u>. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

This Court recognizes that,

> in a post conviction challenge to a guilty plea:
>
> > [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as

> well as any findings made by the
> judge accepting the plea, constitute
> a formidable barrier in any
> subsequent collateral proceedings.
> Solemn declarations in open court
> carry a strong presumption of
> verity. The subsequent presentation
> of conclusory allegations
> unsupported by specifics is subject
> to summary dismissal, as are
> contentions that in the face of the
> record are wholly incredible.
>
> Blackledge v. Allison, 431 U.S. 63, 73-74, 97
> S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)
> (citations omitted); see also United States v.
> Gonzalez-Mercado, 808 F.2d 796, 799-800 and n.
> 8 (11th Cir. 1987) (while not insurmountable,
> there is a strong presumption that statements
> made during a plea colloquy are true, citing
> Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2

(N.D. Fla. May 17, 2011) (Report and Recommendation), report and

recommendation adopted by Bryant v. McNeil, No. 4:09CV22-SPM/WCS,

2011 WL 2434087 (N.D. Fla. June 16, 2011).

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In his first ground for habeas relief, Petitioner raises a

claim of a violation of substantive due process rights, asserting

Petitioner's actions did not constitute the crime of aggravated

manslaughter of a child. Petition at 3. Petitioner raised this

claim in his Rule 3.850 motion. Ex. C at 7-10. The trial court

rejected this ground, finding it should be raised on direct appeal

and is not cognizable in a Rule 3.850 motion.[2] <u>Id</u>. at 18. As such, the court concluded the claim was procedurally barred. <u>Id</u>. at 19. The First District Court of Appeal (1st DCA) affirmed per curiam. Ex. N. The mandate issued October 26, 2016. <u>Id</u>.

In ground one of the Petition, Petitioner argues he could not have committed the crime because he was not the victim's caregiver. Petition at 5. He contends he was convicted of a crime that did not occur. <u>Id</u>. at 6.

There are two prerequisites to a federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." <u>Upshaw v. Singletary</u>, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted).

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>,

---

[2] A petitioner may not challenge the sufficiency of the evidence through a Rule 3.850 motion. <u>Betts v. State</u>, 792 So.2d 589, 590 (Fla. 1st DCA 2001).

> e.g., Coleman, supra, at 747–748, 111 S.Ct.
> 2546; Sykes, supra, at 84–85, 97 S.Ct. 2497. A
> state court's invocation of a procedural rule
> to deny a prisoner's claims precludes federal
> review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. ––––, ––––, 131 S.Ct.
> 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard
> v. Kindler, 558 U.S. ––––, ––––, 130 S.Ct.
> 612, 617–618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted claims
> from being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012).

After a thorough review of the record before the Court, the Court concludes Petitioner failed to properly exhaust ground one in the state courts because he did not present the claim in a procedurally correct manner by raising it on direct appeal.[3] See Upshaw, 70 F.3d at 578-79. Since he did not present his claim to the state courts in a procedurally correct manner, the ground is procedurally barred.

Petitioner has failed to show cause, and he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup

---

[3] The record shows, through counsel, Petitioner filed a Notice of Appeal, but thereafter, counsel filed a Notice of Voluntary Dismissal. Ex. A; Ex. B. On March 12, 2015, the 1st DCA dismissed the appeal. Ex. B.

v. Delo, 513 U.S. 298 (1995), Petitioner has not done so. The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). With respect to this unexhausted ground, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, the Court finds ground one procedurally barred.

In the alternative, Petitioner is not entitled to post conviction relief. The aggravated manslaughter of a child statute does not directly or unduly burden the fundamental rights of Petitioner. See Doe v. Moore, 410 F.3d 1337, 1344 (11th Cir.) (in order to trigger substantive due process protection, the statute must directly or unduly burden the fundamental rights of the individuals), cert. denied, 546 U.S. 1003 (2005). As such, Petitioner's Fourteenth and Fifth Amendment challenges are due to be denied.

Petitioner claims he has been wrongly convicted because his actions did not constitute the crime of aggravated manslaughter of

a child.[4]  In this regard, "[t]he question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  U.S. v. Ibarguen-Mosquera, 634 F.3d 1370, 1385 (11th Cir. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319, (1979)).  Although this case did not go to trial, the purported evidence was more than legally sufficient to constitute the crime of aggravated manslaughter of a child.

The record demonstrates the following.  The amended information charged Petitioner with aggravated manslaughter of a child.  Ex. C at 32.  In pertinent part, it states:

> JONATHAN HARVES WILKES on August 13, 2013, in the County of Clay and the State of Florida, did unlawfully by an act, procurement or by culpable negligence, cause the death of a person under the age of 18 years old, to-wit:  Jimmy Blake Bryant, by permitting, authorizing or directing the child victim to climb and top off or block a mature pine tree with a power saw at such a height and in such a manner as to endanger the child's welfare contrary to child safety laws provided in Section 450.06(1) of Florida Statutes, without lawful justification and under circumstances not constituting excusable homicide or murder, contrary to the provisions of Sections 782.07(1)&(3) and 827.03(1)(e), Florida Statutes.

Id.

Detective H. Lanier of the Clay County Sheriff's Office provided the Affidavit for Arrest Warrant:

---

[4] Notably, Petitioner does not claim that he was convicted of a non-existent crime.  See Moore v. State, 924 So.2d 840, 841 (Fla. 2nd DCA) (per curiam) (holding conviction for a non-existent crime is fundamental error that can be raised at anytime).

Your affiant is a Detective with the Clay County Sheriff's Office and has been so employed for ten years. On 8/13/2013, the victim, a 14 year old minor, died as a direct result of the gross and culpable negligence of his employer, Jonathan Wilkes. Investigation revealed the following incident occurred within Clay County, Florida:

The victim was a part time employee of John Wilkes Tree Service, owned and managed by Jonathan Wilkes. The victim's normal duties consisted of moving fallen limbs and branches from the ground to a trailer or truck bed. To the knowledge of his family, the victim was never to climb a tree. On 8/13/2013 the victim, witnessed by and with the consent of and under the supervision of his employer, the defendant, climbed a pine tree on the property located at 4202 Scenic Drive, Middleburg. Based on measurements taken at the scene, the pine tree measured 71'1" in height. Using boot spikes, a climbing harness, and a power chainsaw, the victim climbed approximately 68 feet up the tree and cut limbs that branched off the trunk of the tree. He then cut 2'2" off the top of the trunk, a process known as "blocking." The victim then climbed down approximately 19' and began to "block" off a 16'1" portion of the trunk. Due to the weight of a block that large, it began to fall prior to anticipated, creating a spur 3'9" in length and .75" in depth, which is consistent with the approximate location of the victim's climbing harness. The victim wore climbing harness. This climbing harness was severed, causing the victim to fall to the hard packed dirt driveway. The victim fell from the last area the tree was being cut by the victim. Simultaneous to the last tree cut and the falling tree trunk the victim fell to the ground. There was no evidence to confirm the victim used a secondary safety harness that is common practice in this occupation and may have prevented the fall. Clay County Fire Rescue arrived on scene and transported the victim to UF Health Shands Jacksonville via Life Flight where he succumbed to his traumatic injuries. Medical examination

revealed the victim died as a result of blunt force to his head and chest.

The defendant stated that although he knew the victim his entire life, he believed the victim to be 16 years of age, rather than 14 years. Despite his belief that the victim was 16 years of old [sic], the defendant utilized him an employee in a hazardous occupation, violating Florida State Statute 450.061/1d which restricts the employment of minors under the age of 18 years in a logging occupation. The defendant further ignored the restrictions of more Florida Child Labor Laws that are in place to prevent injuries or deaths to a child of 14 years. Such violations include allowing a child of 14 years of age to operate power-driven machinery, including all power mowers and cutters (FSS 450.061/1a; as well as working on scaffolding, roofs, or ladders above 6 feet tall (FSS 450.061/2b). The culmination of these violations results in the defendant's culpable negligence and the death of the victim.

Ex. C at 33 (paragraph spacing and indentation not in original).

Petitioner was charged with one count of aggravated manslaughter of a child by culpable negligence under Fla. Stat. § 782.07(3), which provides: "[a] person who causes the death of any person under the age of 18 by culpable negligence under § 827.03(2)(b) commits aggravated manslaughter of a child, a felony of the first degree[.]" Upon review, Fla. Stat. § 827.03(2)(b) states: "[a] person who willfully or by culpable negligence neglects a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the second degree[.]" The "neglect of a child" is defined in Fla. Stat. 827.03(1)(e):

1. A caregiver's failure or omission to provide a child with the care, supervision, and services necessary to maintain the child's physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the child; or

2. A caregiver's failure to make a reasonable effort to protect a child from abuse, neglect, or exploitation by another person.

Except as otherwise provided in this section, neglect of a child may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death, to a child.

In essence,

The elements of aggravated manslaughter of a child are (1) defendant caused the death of one under eighteen and (2) did so "by culpable negligence under § 827.03(3)." Section 827.03 criminalizes the willful or culpably negligent "neglect" of a child which causes great bodily harm to a child, making it a second degree felony. Such statute also criminalizes the willful or culpably negligent "neglect" of a child which does not cause great bodily harm, making it a third degree felony. Section 782.07(3), in effect, adds a third "culpably negligent" charge by criminalizing neglect which causes the death of the child, making it a first degree felony. Although section 782.07(3) incorporated section 827.03(3) in its definition, it does so only as said section relates to culpable negligence.

Koenig v. State, 757 So.2d 595, 596 (Fla. 5th DCA 2000). See Hare v. State, 114 So.3d 252, 254 (Fla. 5th DCA 2013) (to prove child neglect, "the State is required to prove that the defendant acted

- 17 -

willfully or with culpable negligence in creating a situation or allowing a dangerous condition to occur").

Also of note, by statute in Florida:

> (1) No minor 15 years of age or younger, whether or not such person's disabilities of nonage have been removed by marriage or otherwise, shall be employed or permitted or suffered to work in any of the following occupations:
>
> (a) In connection with **power-driven machinery**, except power mowers with cutting blades 40 inches or less.
>
> . . . .
>
> (d) Sawmills or logging operations.

Fla. Stat. § 450.061(1) (emphasis added).

Petitioner pled guilty to the offense as charged. Ex. C at 23-24; Ex. K at 52-63. In ground one of the Petition, he contends he was not a caregiver, and could not be in the class of persons who could "neglect a child" pursuant to Fla. Stat. § 827.03(1)(e). Petition at 5.

Recently, this Court, in <u>Ramos v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:15-cv-904-J-34PDB, 2018 WL 1933701 (M.D. Fla. April 24, 2018), addressed a challenge to a judgment of conviction for aggravated manslaughter of a child. In <u>Ramos</u>, the state trial court instructed the jury that the state had to prove two elements beyond a reasonable doubt: that the victim was dead, and the death was caused by the culpable negligence of the defendant. <u>Id</u>. at *10. The trial court defined culpable negligence, instructing, in

order to find negligence to be culpable, "it must be gross and
flagrant." Id. The trial court continued:

> [c]ulpable negligence is a course of conduct
> showing reckless disregard of human life or of
> the safety of persons exposed to its dangers –
> to its dangerous effects, or such an entire
> want of care as to raise a presumption of a
> conscious indifference to consequences, or
> which shows wantonness or recklessness, or a
> grossly careless disregard for the safety and
> welfare of the public, or such an indifference
> to the rights of others as is equivalent to an
> intentional violation of such rights.

Id.

The trial court instructed that the act or omission had to be
committed, "with an utter disregard for the safety of others." Id.
Finally, the trial court said, "[c]ulpable negligence is
consciously doing an act or following a course of conduct that the
defendant must have known or reasonably should have known was
likely to cause death or great bodily injury." Id.

After these instructions, the trial court charged the jury
with finding whether the death of the child was caused by the
neglect of a caregiver. Id. The trial court instructed a
"caregiver" is a parent, adult household member, "or other person
responsible for a child's welfare." Id.

If Petitioner had elected to go to trial, comparable
instructions would have been given to a jury. Petitioner employed
a fourteen-year-old, and had him working "[i]n connection with
power-driven machinery[,]" that was not a mower. See Fla. Stat. §
450.061(1)(a). With its prohibition of employment of young minors

to operate dangerous machinery, the Florida legislature has considered the employment of the child "the act from which the injury follows as the foreseeable consequence." Baldridge v. Hatcher, 266 So.2d 112, 113 (Fla. 2nd DCA 1972) (finding the legislature intended to protect minors from inherently dangerous conduct).

In short, the jury would be asked if the defendant's "conduct met the element of causing the death of a minor." Ramos v. Sec'y, Fla. Dep't of Corr., NO. 18-12078-G, 2018 WL 6131829, at *1 (11th Cir. Nov. 15, 2018). Importantly, the jury would be asked to decide whether the victim was a child and the defendant a caregiver (a person responsible for the child's welfare). See Pethtel v. State, 177 So.3d 631, 634 (Fla. 2nd DCA 2015) (noting the jury's special findings regarding same).

Although culpable negligence is not defined in the relevant statute, Fla. Stat. § 827.03(2)(b), the standard jury instruction defines culpable negligence as including negligence that is gross or flagrant, a course of conduct amounting to a reckless disregard of human life, conduct evincing an "entire want of care as to raise a presumption of a conscious indifference to consequences," and wantonness or recklessness. Fla. Std. Jury Instr. (Crim) 7.7. See Ibeagwa v. State, 141 So.3d 246, 247 (Fla. 1st DCA 2014) (summarizing the standard jury instruction defining culpable negligence); Freeman v. State, 969 So.2d 473, 478 (Fla. 5th DCA 2007) (same). Culpable negligence "is reserved for egregious

acts[,]" those "evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects." <u>Ibeaqwa</u>, 141 So.3d at 250 (Clark J., dissenting) (citations and quotations omitted). Although there is no intent to injure at issue, the negligence is "committed with an utter disregard for the safety" of the child. <u>Ristau v. State</u>, 201 So.3d 1254, 1257 (Fla. 2nd DCA 2016).

Although Petitioner contends he was not a caregiver, that would necessarily be a question of fact for the jury (or the trial court if the court were the fact-finder). Based on the record before the Court, it is quite apparent that the state had enough evidence supporting the charge of aggravated manslaughter of a child to bring the charge and to present evidence supporting that charge to a jury. The victim, a minor, died, Petitioner was the authority figure/employer on the job site, and the death of the child was tied to the actions of Petitioner, alleged neglect through gross or flagrant culpable negligence. As such, the Court finds Petitioner's due process claim is due to be denied.

### B.  Ground Two

In his second ground, Petitioner raises a claim of the ineffective assistance of counsel for failure to file a motion to dismiss the charge of aggravated manslaughter of a child. Petition at 7. Generally, Petitioner complains his attorney failed to investigate the charges, depose the witnesses, and become familiar

with the facts and laws regarding the incident.  Id. at 9.  The record belies this contention.

At the plea proceeding, Petitioner's attorney, Assistant Public Defender Mark Wright, announced the following:

> Your Honor, this is Mr. Wilkes now present to my right, and at this time we're prepared to withdraw our previously entered plea of not guilty and enter a plea of guilty to the Court.  I had an opportunity to discuss the Plea of Guilty form with Mr. Wilkes and to go over his questions.
>
> And by way of a –– an explanation as to what's been done up to this point, Your Honor, we've completed depositions in the case; we did quite a bit of –– of research on, you know, the relevant issues in the case, and after discussing all options with Mr. Wilkes, he feels like this is in his best interest to go forward in this manner, so at this time I will tender the Plea of Guilty form.

Ex. K at 53-54.

Thus, prior to the plea, depositions had been completed, research had been conducted, and the attorney had discussed all of the options with Petitioner.  Additionally, defense counsel discussed the plea form with Petitioner and went over any questions with Petitioner.

The sentencing transcript reveals the attorney was invested in the case.  He said he was immediately troubled and "conflicted" about the facts of the case.  Id. at 75.  He explained that on the one hand it was a tragedy resulting in the death of a young boy, but it was also the story of boys growing up on farms and working in the countryside, doing hard and sometimes dangerous jobs.  Id.

at 75-77.  The attorney also demonstrated his dedication to investigating the case by introducing a packet to the court regarding statistics concerning workplace fatalities, and in particular fatalities tied to logging operations and tree trimming. Id. at 77.  He opined, "if Mr. Wilkes had not allowed Blake to climb, we wouldn't be here today.  So he pled guilty."  Id. at 78.

Petitioner raised a comparable claim to ground two of the Petition in his Rule 3.850 motion as ground two.  Ex. C at 10-14. The trial court denied relief.  Id. at 19-21.  The 1st DCA affirmed per curiam.  Ex. N.

In denying this ground, the trial court initially recognized the two-pronged Strickland standard of review for the claims of ineffective assistance of counsel, and addressed its application in the context of guilty pleas, relying on Hill.  Ex. C at 19.  The court pointed out the undisputed matters: Petitioner was the employer; the minor fourteen-year-old victim was the employee; and, the victim climbed a tree and was cutting limbs with a chainsaw when he fell and died.  Id. at 20.  The court also referenced relevant statutes and stated a motion to dismiss the charges would have been denied.  Id. at 21.

The 1st DCA affirmed the decision of the trial court without opinion.  Ex. N.  Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion.  The state has not attempted to rebut this presumption.

Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The state court's decision is not inconsistent with Supreme Court precedent, including Stickland and Hill. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill, or based on an unreasonable determination of the facts. As such, ground two is due to be denied.

Apparently, Petitioner is contending the negligent act of hiring a fourteen year-old to work with power-driven machinery would not have constituted culpable negligence, as it was simple negligence, and he also asserts he was not a caregiver. As noted previously, if Petitioner elected to go to trial, the jury would have had to make the decision as to whether Petitioner was a caregiver (a person responsible for the child's welfare) and whether the negligence included conduct that was gross or flagrant, or a course of conduct amounting to a reckless disregard of human life, or conduct evincing an entire want of care as to raise a presumption of a conscious indifference to consequences, or even wantonness or recklessness.

At sentencing, the prosecutor expressed his dismay:

> The State's concern in this case is that Mr. Wilkes, for a few hundred dollars, sent a 14-year old with a Chainsaw up a 70 foot tall tree. That tree was just less than 10 feet away from a power pole.
>
> . . . .

Yes.  He [Mr. Wilkes] was working that day or attempting to run a business.  He had two other full-grown males working under his authority.  Neither of them were sent up the tree.  A 14-year old, in total violation of any law and common sense, was sent up a tree with a Chainsaw.

. . . .

And it's not -- I recognize driving farm vehicles can be dangerous, but sending someone up a 70-foot tree with a Chainsaw should just send shivers down anybody's spine -- parents, any passerby -- what's going on here?

**It's that -- you know, it's dangerous enough to send a totally experienced individual up a tree**, which would've been Mr. Wilkes because apparently he's the one that normally goes up the tree, but he had a broken arm or something wrong with his arm.  He couldn't climb the tree.  **That's why for a few hundred dollars, he was willing to expose a 14-year old to death, which was the ultimate result.**

Id. 79-81.

Certainly, there was more at play here than simply hiring a fourteen-year-old to work with power-driven machinery.  The state was prepared to show that Petitioner, the employer and authority on site, had a minor, albeit while wearing boot spikes and a climbing harness, climb a 70 foot tall tree, with a chainsaw, and try to block off a portion of the tree.  Ultimately, the question is whether this was a gross and flagrant violation of a duty of care.[5]

---

[5] The Court recognizes that in many jurisdictions, a civil action would have been brought for monetary damages against Petitioner as the employer.  See Baldridge, 266 So.2d at 112 (minor employee brought an action against operator of garbage disposal service for injuries the minor sustained while operating the

- 25 -

Again, the showing of neglect may be based on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death. As poignantly noted by Petitioner's counsel, "if Mr. Wilkes had not allowed Blake to climb, we wouldn't be here today." Ex. K at 78.

With respect to the claim that defense counsel's performance was rendered deficient for failing to file a motion to dismiss the charge, the Court concludes defense counsel was not ineffective for failing to file a motion sure to be denied. "Defense counsel, of course, need not make meritless motions or lodge futile objections." Brewster v. Hetzel, 2019 WL 272835, at *10 (citing Meders, 900 F.3d at 1349). As such, Petitioner has failed to demonstrate counsel performed deficiently. As Petitioner has failed to satisfy the first prong of Strickland, the Court need not address the prejudice prong. Brewster v. Hetzel, 2019 WL 272835, at *6 (citation and quotation omitted). Ground two is due to be denied.

---

garbage truck compressor, with the court finding violation of the statute forbidding employment of the minor negligence per se). However, as noted by the trial court, the prosecuting authority for Clay County elected to file criminal charges against Petitioner in response to the tragic death of the victim. Ex. K at 72.

## C. Grounds Three, Four, and Six

In his third, fourth and sixth grounds for habeas relief, Petitioner raises claims of ineffective assistance of counsel for failure to inform Petitioner of the defenses to the charge before Petitioner entered his plea, for failure to object to the inclusion of sentencing points for causing the death of the victim, and for failure to file a motion in limine. Petition at 10, 14, 20. Respondents contend Petitioner did not exhaust these claims in the state court system and he has procedurally defaulted these grounds. Response at 20-26, 32-33.

Since the question of exhaustion has been raised, this Court must ask whether Petitioner's claims were fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting

the state court with "all the facts necessary
to support the claim," or by making a
"somewhat similar state-law claim." <u>Kelley</u>,
377 F.3d at 1343–44. Rather, he must make his
claims in a manner that provides the state
courts with "the opportunity to apply
controlling legal principles to the facts
bearing upon (his) [federal] constitutional
claim." <u>Id</u>. at 1344 (quotation omitted).

<u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-52 (11th Cir.

2012), <u>cert</u>. <u>denied</u>, 568 U.S. 1104 (2013).

The doctrine of procedural default requires the following:

Federal habeas courts reviewing the
constitutionality of a state prisoner's
conviction and sentence are guided by rules
designed to ensure that state-court judgments
are accorded the finality and respect
necessary to preserve the integrity of legal
proceedings within our system of federalism.
These rules include the doctrine of procedural
default, under which a federal court will not
review the merits of claims, including
constitutional claims, that a state court
declined to hear because the prisoner failed
to abide by a state procedural rule. <u>See</u>,
<u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747–748, 111 S.Ct.
2546; <u>Sykes</u>, <u>supra</u>, at 84–85, 97 S.Ct. 2497. A
state court's invocation of a procedural rule
to deny a prisoner's claims precludes federal
review of the claims if, among other
requisites, the state procedural rule is a
nonfederal ground adequate to support the
judgment and the rule is firmly established
and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker
v. Martin</u>, 562 U.S. ----, ----, 131 S.Ct.
1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard
v. Kindler</u>, 558 U.S. ----, ----, 130 S.Ct.
612, 617–618, 175 L.Ed.2d 417 (2009). The
doctrine barring procedurally defaulted claims
from being heard is not without exceptions. A
prisoner may obtain federal review of a
defaulted claim by showing cause for the
default and prejudice from a violation of
federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. at 9-10.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 558 U.S. 1151 (2010). Here, it is clear that any future attempts at exhaustion would be futile as they would be barred.

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). If cause is established, a petitioner is required to demonstrate prejudice. In order to demonstrate prejudice, a petitioner must show "that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." <u>Owen</u>, 568 F.3d at 908. More particularly, to demonstrate cause, a petitioner must show that some objective factor external to the defense impeded his effort to

properly raise the claim in state court.  <u>Wright v. Hopper</u>, 169
F.3d 695, 703 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

After a thorough review of the record before the Court, the
Court concludes Petitioner failed to exhaust these claims in the
state courts.  It is clear from state law that any future attempts
at exhaustion of these grounds would be futile.  As such, he has
procedurally defaulted grounds three, four, and six claiming
ineffective assistance of counsel.

In his Reply, Petitioner submits this procedural default
should be excused because he meets the narrow exception under
<u>Martinez</u>.  Reply at 19-20, 23, 29.  In order to overcome his
default, Petitioner must demonstrate that the underlying
ineffectiveness claims are substantial.  Indeed, "[t]o overcome the
default, a prisoner must also demonstrate that the underlying
ineffective-assistance-of-trial-counsel claim is a substantial one,
which is to say that the prisoner must demonstrate that the claim
has some merit."  <u>Martinez</u>, 566 U.S. at 14 (citation omitted).

As discussed in the alternative merits analysis that follows,
the ineffectiveness claims raised in grounds three, four, and six
lack any merit.  Therefore, Petitioner has not shown that he can
satisfy an exception to the bar.  A discussion follows.

In ground three of the Petition, Petitioner claims his counsel
was ineffective for failure to inform Petitioner of the defenses to
the charge before Petitioner entered his plea.  Respondents assert
the claim raised in ground three is not a substantial one because

Petitioner's contention that his actions did not amount to aggravated manslaughter of a child is without merit.  Response at 23.  The state relies on its argument presented in response to grounds one and two of the Petition.  Id.

As noted previously by the Court, a rational trier of fact could have found the essential elements of the crime of aggravated manslaughter of a child beyond a reasonable doubt.  Petitioner, as the employer and authority figure on the job site could be considered the person responsible for the child's welfare, and Petitioner's conduct could be perceived as a course of conduct amounting to a reckless disregard of human life and a gross and flagrant violation of a duty of care.

The record also demonstrates Petitioner signed the Plea of Guilty form.  It states, in pertinent part,

> I hereby enter my plea of guilty because I am guilty.  Before entering such plea of guilty, I was advised of the nature of all the charges against me, the statutory offenses included within such charges, the range of maximum allowable punishments for each charge, **all the possible defenses to each charge**, and all circumstances in mitigation of such charges. I have been advised of all other facts essential to a full and complete understanding of all offenses with which I have been charged, and of all offenses to which I am entering this plea.  I have been advised of all direct consequences of the sentence to be imposed.

Ex. C at 23 (emphasis added).  Under the section entitled Consultation with Attorney, it further states, "[w]e have fully

discussed all aspects of this case, including all possible defense to all charges[.]" Id.

At the inception of the plea proceeding, defense counsel informed the court that quite a bit of research had been done concerning the relevant issues in the case, and all options had been discussed with Petitioner. Ex. K at 53. Petitioner elected to plead straight up to the court, concluding it was in his best interest. Id. Petitioner confirmed that he believed the plea of guilty was in his best interest. Id. at 61-62.

The court advised Petitioner:

> But as far as the trial goes when you plead guilty you give -- you give up the right to the trial and everything that goes with it. You give up your right to any preliminary motions that could be filed by your attorney. You give up the right to remain silent and you give up the right to appeal as long as you're not sentenced in some illegal fashion.
>
> Now, all that's on the blue Plea of Guilty form; did you and Mr. Wright read over the form in detail?

Id. at 60-61. Petitioner responded in the affirmative. Id. at 61.

Solemn declarations in open court carry a strong presumption of verity. Notably, Petitioner expressed complete satisfaction with his counsel at the plea proceeding and confirmed no questions remained unanswered. Id. at 61.

The Court is not convinced that ground three has some merit. As such, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez, in which the Supreme

Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings. Since Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground three of the Petition.

In ground four of the Petition, Petitioner claims his counsel was ineffective for failure to object to the inclusion of sentencing points for causing the death of the victim. Petition at 14. Respondents submit the claim raised in ground four is not a substantial one because the trial court denied the claim raised in Petitioner's Motion to Correct Illegal Sentence that the 120 points for victim injury were improperly assessed. Respondents argue that the attorney's performance could not be found deficient for failing to raise a contention sure to be denied. Response at 27.

Upon review, Petitioner did file a Motion to Correct Illegal Sentence contending 120 victim injury points were improperly assessed against him. Ex. O. The trial court denied the motion, finding it to be without merit. Ex. P.

The Court is not convinced that ground four has some merit as the claim was soundly rejected by the trial court. As such, Petitioner has failed to show that he falls within the narrow parameters of the ruling in <u>Martinez</u>, in which the Supreme Court

recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings. Since Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground four of the Petition.

In ground six of the Petition, Petitioner claims his counsel was ineffective for failure to file a motion in limine to prohibit the introduction of evidence that Petitioner violated Florida child labor laws and to prevent the state from arguing Petitioner's violation of such laws constitutes culpable negligence. Petition at 20. Respondents counter this argument, contending the issue raised in ground six is not a substantial one because a motion in limine would have been denied because the state law violations were inextricably intertwined with the case against Petitioner. Response at 35-36.

Violation of the statute forbidding employment of a minor in connection with power driven machinery is negligence per se and not mere evidence of negligence, Baldridge, 266 So.2d at 112, but negligence per se does not equate with actionable negligence. Bryant v. Jax Liquors, 352 So.2d 542, 544 (Fla. 1st DCA 1977) (victim must be a protected member who suffered an injury of the

type the statute was designed to prevent, and must show the violation of the statute was the proximate cause of injury), <u>cert</u>. <u>denied</u>, 365 So.2d 710 (Fla. 1978).

In order to prove aggravated manslaughter of a child, the state must prove culpable negligence. Here, the state was prepared to show Petitioner, the employer and decision-maker on the job site, permitted, authorized, or directed a minor, albeit while the minor was wearing boot spikes and a climbing harness, to climb a 70 foot tall tree while wielding a chainsaw, to block off a portion of the tree. The state contended Petitioner's directive to the victim to undertake this task, or authorization of same, amounted to a gross and flagrant violation of a duty of care, even though the victim was wearing boot spikes and a harness. The state maintained Petitioner's actions of directing or authorizing the child to climb and top off or block a mature pine tree with a power saw at such a height and in such a manner as to endanger the child, ultimately resulting in the death of the minor, amounted to aggravated manslaughter of a child.

As noted by Respondents, the allegation that Petitioner directed or authorized the minor to climb the tree with a power saw in violation of the statute prohibiting employment of minors in hazardous occupations was inextricably intertwined in the case against Petitioner because the case not only concerned the minor's use of power-driven machinery in his job, a statutory violation, it

also concerned the hazardous job of climbing a mature tree and using a power-driven saw to attempt to top off or block the tree. The court is not convinced that defense counsel's performance fell below an objective standard of reasonableness by failing to file a motion in limine under the circumstances presented. The record shows that the state was prepared to prove the culmination of the events, which started with Petitioner hiring a minor in an occupation in connection with power-driven machinery, and ultimately resulted in the death of the minor when Petitioner permitted, authorized or directed the minor to climb the tree and perform the task to top off or block the tree.

The Court is not convinced that ground six has some merit. As such, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez, in which the Supreme Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings. Since Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground six of the Petition.

In conclusion, the Court finds grounds three, four, and six are unexhausted and procedurally defaulted. Petitioner has failed

to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of these claims.  Petitioner's procedural default should not be excused pursuant to the narrow exception set forth in <u>Martinez</u>.  Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claims are substantial ones.  Consequently, Petitioner has failed to establish cause for the procedural default of his claims of ineffective assistance of counsel raised in grounds three, four, and six.

Alternatively, even assuming these grounds are not procedurally barred, Petitioner is not entitled to habeas relief based on grounds three, four, and six.  He has failed to carry his burden of showing that counsel's representation fell outside the wide range of reasonably professional assistance.  Even assuming deficient performance by counsel, Petitioner has not shown resulting prejudice.  There is not a reasonable probability that the outcome of the case would have been different if trial counsel had taken the actions, made the objections, and filed the motions suggested by Petitioner.  Defense counsel's performance did not fall below an objective standard of reasonableness prejudicing the defense.

### D.  Ground Five

In his fifth ground for habeas relief, Petitioner claims the trial court committed fundamental error for imposing victim-injury

points without a finding by a jury that the victim's death was the direct result of Petitioner's criminal actions. Respondents concede that Petitioner exhausted this claim by raising it in his motion to correct illegal sentence. Response at 28.

The record demonstrates the following. At the plea proceeding, the trial court informed Petitioner he faced a minimum sentence of thirteen years and eight months, and a maximum sentence of thirty years. Ex. N at 54, 58-59. By pleading guilty, Petitioner gave up the right to have a jury determination that the victim's death was the direct result of Petitioner's criminal actions.[6] See Response at 29.

Petitioner's Criminal Punishment Code Scoresheet reflects a score of 116 points for the first degree felony offense of aggravated manslaughter of a child. Ex. O, Scoresheet. It also shows 120 victim injury points for the death of the victim. Id. Petitioner received additional points for a prior record and a legal status violation. Id.

The trial court sentenced Petitioner to a sentence of fifteen years, Ex. C at 28-30, a sentence well below the statutory maximum. Gisi v. State, 848 So.2d 1278, 1282 (Fla. 2nd DCA 2003) (if the addition of victim injury points causes the sentence to be

---

[6] Here, the victim injury points did not increase the sentence beyond the statutory maximum, a fact which would have to be submitted to a jury pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000).

increased beyond the statutory maximum, the facts must be submitted to a jury).

Petitioner exhausted his claim by raising it in a post conviction motion to correct illegal sentence. The trial court denied relief, finding the claim without merit:

> In the Motion, Defendant challenges the inclusion of 120 points for victim injury on his sentencing scoresheet. (Ex. D.) Defendant argues the additional points were imposed in error because the evidence did not show that Defendant directly caused the victim's death.
>
> Defendant's claim is without merit. Defendant pled to and was convicted of Aggravated Manslaughter of a Child and the child died as a result of Defendant's actions. (Ex. E.) There is no apparent error in the assessment of the victim injury points on the fact of the record.

Ex. P at 1-2.

The last state court to decide this claim provided an explanation for its merits-based decision in a reasoned opinion; therefore, this Court must simply review the reasons given by the state court and defer to those reasons, if they are reasonable. Here, the state court found Petitioner pled to the offense of aggravated manslaughter of a child. As such, Petitioner pled guilty and admitted causation resulting in the death of the minor. The state court also found no apparent error in the assessment of the victim injury points. This Court must defer to the reasons provided by the state court as they are reasonable.

Petitioner is not entitled to habeas relief on this ground because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Alternatively, Petitioner is not entitled to relief on this claim. He pled guilty and gave up his right to a jury determination as to causation. Furthermore, his fifteen-year sentence was well within statutory maximum of thirty years.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED.**

2.    This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[7] Because this Court

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of February, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/5
c:
Jonathan Harves Wilkes
Counsel of Record